## Mintzer & Kneisler, Inc., Appellant, *v.* Schwarzschild & Sulzberger Company of America.

*Contract—Sales—Principal and agent—Authority of agent.*

1. Where a purchaser asks the agent of a dealer for a price on goods to be delivered in the future, and the agent states that he must consult his principal, and subsequently returns with a written proposition from the principal, and the purchaser persuades the agent to change the

wording of the written proposition in such a way that the price was reduced about one-half, and this is done by the agent without consultation with his principal, and without further authority from him, the purchaser cannot recover damages from the seller for failure to deliver the goods at the reduced price.

2. Where twenty-five barrels of a particular kind of goods are purchased under a verbal agreement with an agent of the seller and subsequently the agent is persuaded to sign a written agreement, the effect of which was to reduce the price to an amount about one-half of the price which the agent alleged was fixed at the verbal sale, and the agent acts without authority from his principal to execute the written agreement, and thereafter five barrels of the goods are shipped and billed by mistake at the reduced price, but the mistake is corrected at once by the sending of a proper bill, the purchaser cannot hold the seller liable for failure to deliver the remainder of the twenty barrels at the reduced price. In such a case it is for the jury to determine what were the terms of the original verbal agreement under the disputed testimony, and whether the principal ratified the action of the agent in signing the written agreement.

Argued Oct. 9, 1913.   Appeal, No. 31, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1910, No. 2,717, on verdict for defendant in case of Mintzer & Kneisler, Inc., v. The Schwarzschild & Sulzberger Company of America.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Assumpsit for failure to deliver goods.   Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

As I said, there is no doubt about the shipment and delivery of the 1,982 lbs. of hog casings. The first question that the case presents is the question what contracts there were between Schwarzschild & Sulzberger on the one side and Mintzer & Kneisler on the other. It is claimed by the latter that there were two contracts. One was made by word of mouth, a sort of

memorandum of it was afterwards written out. And the other was, they say, made in writing. The first I have referred to related to the immediate delivery of twenty-five barrels of hog casings, and the second referred to the delivery during a period of sixty days of twenty-five barrels more of hog casings. I charge you as a matter of law, that you need not concern yourselves with this so-called written contract, in relation to the future delivery of twenty-five barrels of hog casings. I think that we are justified in dropping that out of the case, and for this reason. Mr. Corvin, the salesman of Schwarzschild & Sulzberger, during his negotiations with Mintzer & Kneisler, informed that firm that he had no authority whatever to make contracts for future deliveries. They understood that perfectly. He told them, it is true, that he thought he could get certain terms and prices for them for a future delivery of twenty-five barrels of hog casings, but he said that he had to consult the principal office of the corporation that he represented, and get authority to contract from that source. This, I think, was about January 18, 1910.

Verdict and judgment for defendant for $759.35. Plaintiff appealed.

. *Error assigned* was portion of charge as above, quoting it.

*A. S. Longbottom*, with him *Robert J. Byron*, for appellant.—The direction of the court, in charging the jury, that they should disregard the contract for future delivery, was equivalent to binding instructions for defendant as to that portion of plaintiff's claim, and was clearly erroneous, because the testimony relating to both contracts raised issues of fact which should have been submitted to the jury: Woolman v. Ice Co., 18 Pa. Superior Ct. 596; Baltzell v. Cook, 19 Pa. Superior Ct. 490; Bucklin v. Davidson, 155 Pa. 362; Hill v. Trust Co.,

108 Pa. 1; Folsom v. Cook, 115 Pa. 539; Codding v. Wood, 112 Pa. 371; Mildren v. Steel Co., 90 Pa. 317; Snyder v. Steinmetz, 6 Pa. Superior Ct. 341; Hineman v. Matthews, 138 Pa. 204; Wenrich v. Heffner, 38 Pa. 207; Morris v. Morris, 8 Pa. Superior Ct. 116; Gates v. Watt, 127 Pa. 20; Kelly v. McGehee, 137 Pa. 443; Baker v. Gas Co., 157 Pa. 593.

The testimony shows that Corvin had been held out by Schwarzschild & Sulzberger Company to Mintzer & Kneisler, Incorporated, as its salesman, and as such authorized to sell hog casings, and that this and former sales made by Corvin to appellant had been ratified by his principal, therefore all of the facts and testimony surrounding and incident to the making of the two contracts should have been submitted to the jury: Rheinstrom v. Brewing Co., 28 Pa. Superior Ct. 519; Adams Express Co. v. Schlessinger, 75 Pa. 246; Grasselli Chemical Co. v. Purchasing Co., 22 Pa. Superior Ct. 426; McCullough v. Ins. Co., 2 Pa. Superior Ct. 333; Imbrie v. Insurance Co., 178 Pa. 6; Ritchie v. Mfg. Co., 173 Pa. 447; Watson v. Lukins, 126 Pa. 630; Straub Brewing Co. v. Bonistalli, 5 Pa. Superior Ct. 415; Chicago Cottage Organ Co. v. McManigal, 8 Pa. Superior Ct. 632; Landes v. Insurance Co., 190 Pa. 536.

*Wm. F. Berkowitz*, with him *Samuel W. Salus*, for appellee.—The acceptance of an offer must be unconditional and identical with the terms of the offer: Slaymaker .v. Irwin, 4 Whart. 369; Commercial Bank of Cincinnati v. Pleasants, 6 Whart. 375; Bruggmeman v. Larzelere, 14 W. N. C. 108; Allen v. Kirwan, 159 Pa. 612; Sparks v. Pittsburg Co., 159 Pa. 295; Merrick Thread Co. v. Shoe Mfg. Co., 19 W. N. C. 573; Greene v. Ins. Co., 91 Pa. 387; Thrall v. Wilson, 17 Pa. Superior Ct. 376; Fee v. Adams Express Co., 38 Pa. Superior Ct. 83.

OPINION BY HEAD, J., February 20, 1914:

The cross suits begun by the parties to this appeal

respectively were consolidated by an order of the court below and tried as one action. In the case in which the appellee was plaintiff, it sought to recover the price of five barrels of hog casings sold and delivered to the appellant. The receipt and use by the latter of this merchandise were not in dispute, the contention of the parties, in this respect, being as to the price which the purchaser was to pay. The appellant, in its action, sought to recover damages for the breach of two alleged contracts which it claimed had been entered into by the appellee. It appears, from the testimony offered by the appellant, that after a verbal contract had been made by its officers with an agent of the appellee for the sale and purchase of twenty-five barrels of casings for immediate delivery, they sought to make a further contract for a like quantity, twenty-five barrels, for future delivery. They were told by the agent he had no authority to quote prices for future deliveries, but would have to take up that question with his principal at Chicago. The purchasers were anxious to have the same price for the goods that they claimed was quoted for immediate delivery. The agent told them he thought he could so manage it, but must submit the matter to headquarters. He shortly thereafter returned with a proposition in writing from his principal which he said he was authorized to execute. This written proposition offered the sale of twenty-five barrels of the desired product for delivery within sixty days at the price of thirty-six cents per pound with the following notation, "40% salt."

We do not understand it to be now denied that the meaning of the proposition so tendered was that each 100 pounds to be paid for at the price named would contain a proportion of salt necessarily used for the preservation of the product not to exceed forty per cent. The appellant declined to accept the proposition as tendered, but as a result of a conversation with the agent the latter was induced to believe that the substance of

the proposition would not be materially changed by his adding to it the following: "less 40% off for salt." He consequently made that addition to the proposal and it was then accepted by the appellant. It is clear enough that the addition of the words quoted resulted in a reduction of the price nearly one-half. That is to say, under the proposition as made by the appellee, the purchaser would have been required to pay for every pound of the article delivered at the price named, including the necessary salt which was not to exceed in weight forty per cent of the whole. By the change that was made in the offer, the purchaser was only to pay for sixty pounds, at the price named, in each 100 pounds delivered. This, as it appears, was far below the market price under such conditions. The appellee promptly repudiated that contract, declined to perform it, and never delivered any part of the shipment thus arranged for. Having gone upon the market and bought twenty-five barrels of casings, at prices ranging between fifty and sixty cents, the appellant sought to set off, by way of damages, this difference in the price.

The learned trial court instructed the jury to disregard the alleged contract for future delivery on the ground there was no evidence to support the conclusion that the appellee had ever agreed or intended to agree to any such contract; that the purchaser knew the agent had no authority to fix the prices and terms for a forward contract, and that such terms and conditions would have to be made by the principal in Chicago. They knew that the principal had made a proposition, had reduced it to writing, and it was before them, and they perfectly understood its import and meaning. They had no right therefore to rely on the act of the agent, resulting either from his own ignorance or because of his reliance on their representations, which worked such a radical change in the proposition made by the principal as we have already noted. In this we think the learned trial judge was correct. The evidence was entirely wanting

to show any meeting of the minds of the parties on the terms and conditions of the alleged contract. On the contrary, it clearly showed there was no such concurrence of opinion, because while the principal was offering in writing to sell goods at a fixed rate per pound, including salt up to forty per cent of the entire weight, the appellant and the agent, who avowedly had no authority to make prices, so manipulated that proposition as to practically cut the price in two. It is not necessary to cite authority to show that neither in law nor in equity could such an injurious contract be fastened upon a principal without his knowledge or assent. The learned trial judge was therefore right in directing the jury to dismiss from their consideration any question of damages arising from the failure of the appellee to perform in accordance with the contention of the purchaser as to the alleged contract for future delivery.

It was further contended that the verbal contract for immediate delivery covered twenty-five barrels. There was a conflict of evidence as to what the terms of this verbal contract were, and this question was fairly submitted by the learned trial judge to the jury. After it had been made and on the day when the written offer for future delivery was submitted to the purchaser, the latter desired to have the agent put in writing a memorandum of the terms and conditions of the verbal contract made a few days before. The agent demurred, saying it was not necessary, that the order had been sent in and the first shipment of five barrels was then on its way to destination. Finally, however, the purchaser drew up a memorandum containing the same expression "less 40% off for salt," which gave rise to the other controversy, and the agent signed it. Five barrels of the consignment were shipped at once, as deliveries were to be made in five-barrel lots. On the day of the shipment a bill was made out by some clerk, following the order as the agent had signed it and giving to the purchaser the reduction of forty per cent

in the weight of the shipment. The error was discovered on the same day by one of the superior officers, a revised bill sent, and a letter explaining the error. No more was shipped on account of that contract because of the disagreement of the parties as to the price. The learned trial judge instructed the jury that if they found from the evidence that the agent had sold twenty-five barrels at thirty-three cents a pound less forty per cent off for salt, as the appellant contended, and that sale had been ratified by the principal, they might award damages for the failure to deliver the twenty barrels to be measured by the difference between the contract price and the market price. If, on the other hand, they accepted as true the testimony of the agent, that he never undertook to sell at any price casings free of salt but merely offered them as they were packed with forty per cent salt, then the purchaser had suffered no damages by reason of the nondelivery of the twenty barrels. The jury evidently accepted as true the contention of the appellee and rendered a verdict in its favor for the price of the five barrels delivered at the rate the agent declared he had offered.

The assignments of error complain only of the action of the learned trial judge in withdrawing from the consideration of the jury the alleged contract for future delivery, but it is argued this not only deprived the appellant of damages justly due for the breach of that contract, but impaired its chance for recovering on the other branch. We are not so persuaded. As we read the record, the case was well tried and we find nothing to warrant us in interfering with the judgment. The assignments of error are overruled.

Judgment affirmed.